JAMES LEVY

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa May 15, 1885.*

1. SPECIAL ASSESSMENT *for street improvement—requisites of the ordinance as descriptive of the character and locality of the work to be done.* If an ordinance for the improvement of a street by special assessment does not contain a description of the nature, character and locality of the proposed improvement, the court will have no authority to confirm the assessment. Without a definite description of the nature and character of the improvement no intelligent estimate of its cost can be made.

2. An ordinance of the city of Chicago ordered and required a certain part of a street to be "filled" and graded to within eleven inches of the grade of the pavement, and paved, describing the paving minutely. The proof showed that the word "filling," as used in the ordinance, had a settled and well known meaning in that city among engineers and street contractors, and meant to raise the surface of the street by using clay, earth, sand, or other suitable material free from animal or vegetable substances, etc.: *Held,* that with such proof the ordinance was not void for uncertainty and indefiniteness, in respect to the character of the work proposed to be done.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. MOSES & NEWMAN, for the appellant.

Mr. G. M. HAYNES, and Mr. F. S. WINSTON, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Cook county, confirming a special assessment which had been made by the city of Chicago, for the improvement of Ogden avenue. The first section of the ordinance under which the assessment was made, is as follows:

"Section 1. That Ogden avenue, from the south line of West Madison street to the north line of West Van Buren street, be and the same is hereby ordered curbed with curbstones, (excepting where curbstones are already set between said points,) said curbstones to be equal to the best quality of Athens stone, not less than four feet long, three feet deep, and five inches in thickness, with top edge full and square, each stone to have a straight base the whole length, and to be firmly bedded upon flat stones, each stone to be bushhammered on the top surface, and twelve inches down from the top; and that said avenue be curbed, etc., (describing it fully); that said avenue, from the south line of West Madison street to the north curb line of West Twelfth street, (excepting a space sixteen feet wide in the middle of said street between said points, and excepting the intersection of Ashland avenue, West Adams street, and West Jackson street,) be and the same is hereby ordered filled and graded to within eleven inches of the grade of the pavement, and paved,"— (minutely describing the paving.)

The objection interposed by appellant to the confirmation of the assessment was, that the ordinance upon which the assessment was based is void for indefiniteness, in not describ-

ing the filling of said street, what materials were to be used in filling said street, and that there was no such description as would warrant the commissioners to estimate the cost thereof.

Section 134, chapter 24, of the Revised Statutes of 1874, page 234, requires the city council, when an improvement is to be made by special assessment, to pass an ordinance specifying the nature, character, locality and description of such improvement. Under this statute it is plain if the ordinance, which may be regarded as the foundation for the assessment, does not contain a description of the nature, character and locality of the improvement, the court would have no authority to confirm the assessment. Indeed, no intelligent estimate of the cost of the improvement could be made by the commissioners to be appointed for that purpose under section 135 of the statute, unless the ordinance prescribes definitely the nature and character of the improvement,—hence the necessity for such a description in the ordinance. The county court, however, held that the ordinance as framed was sufficiently definite, and the decision is conceded to be correct as to all features of the ordinance except as to "filling the street." This language, it is said, is not sufficiently definite to enable the commissioners to make an estimate of the costs of "filling," and upon this ground it is claimed that the ordinance is void. If the word "filling," as used in the ordinance, had a settled and well known meaning in Chicago among civil engineers and street contractors, when used in connection with the improvement of the streets, we are inclined to hold that the ordinance was sufficient. If the term "filling," had a settled and well known meaning in Chicago when used in connection with the improvement of the streets, there would seem to be no uncertainty in the ordinance.

Adolf M. Hirsch, a civil engineer, who has made the improvement of streets a specialty since 1856, says that the term "filling," among civil engineers, means to raise the surface of a roadway to be improved, to a certain height, by using earth,

clay, sand, or other suitable materials free from animal and vegetable substances or other offensive materials. James B. Smith, a paving contractor for seventeen years, says: "The term 'filling' has a well settled meaning among civil engineers and contractors in that line of business. It means to be filled with clay, sand, clean earth, or any solid, imperishable material. When properly confined and settled in a street, there is no difference in the durability of these substances in a street improvement. As to whether the cost of the material, or the hauling of it, is the largest item of expense, depends entirely upon the circumstances where the filling is to be done. As to the present improvement on Ogden avenue, the cost of hauling is the largest item. Ordinarily the only expense of securing filling is the hauling." Adam Amberg, a contractor since 1870, says: "There is a well defined meaning to the term 'filling,' as used in reference to street improvements, among contractors and engineers. The specifications I have seen, call for sand, earth, clay or gravel, ever since I have been a contractor."

This testimony shows that the word "filling," as used in the ordinance, had a well known meaning in Chicago, and it will be presumed that the framers of the ordinance, in the use of the word, intended that it should be expounded and received in the sense it was generally understood in that locality. If, then, the word, as used in the ordinance, had a well known meaning in Chicago, where the improvement was to be made, the ordinance can not be regarded as indefinite or uncertain. We are of opinion that the objection was devoid of merit, and the judgment of the county court was correct.

The judgment will be affirmed.

*Judgment affirmed.*