No. 13645

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

GEORGE DIERUF,

Petitioner,

-vs-

THE CITY OF BOZEMAN, et al.,

Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Petitioner:

Drysdale, McLean and Screnar, Bozeman, Montana
James J. Screnar argued, Bozeman, Montana
Bennett and Bennett, Bozeman, Montana
Lyman Bennett Jr. argued, Bozeman, Montana
McKinley Anderson argued, Bozeman, Montana

For Respondents:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Ben E. Berg argued, Bozeman, Montana
Mike Greely, Attorney General, Helena, Montana

---

Submitted: May 24, 1977

Decided:

Filed:

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner George Dieruf sought a writ of mandamus to compel the city of Bozeman to submit a proposed ordinance and resolution to the electors of the city of Bozeman. Writ of mandamus was denied, petitioner appeals.

On July 21, 1976, the city commission of the city of Bozeman (Commission) passed Ordinance No. 962 adopting a formula for assessing property for the purpose of creating an offstreet parking facility. On July 28 the Commission passed and adopted Resolution No. 1808 creating special improvement district No. 565 to establish that facility.

Thereafter signed referendum petitions were presented to the Commission demanding both the ordinance and resolution be submitted to the electors of the city of Bozeman for their approval or rejection.

On August 25, 1976, at a regular meeting of the Commission, the petitions were rejected by the Commission for the reason that under section 11-3237, R.C.M. 1947, referendum petitions must contain the signatures of 25% of the registered voters of a city before it becomes the duty of the Commission to order an ordinance repealed or submitted to the voters. Here, the petitions contained only 18% of the electors of the city of Bozeman.

Petitioner Dieruf alleges that section 11-3237, R.C.M. 1947, is inapplicable and the question of whether the matter should be submitted is controlled by section 11-1107, R.C.M. 1947, arguing that the submission of Resolution No. 1808, creating special improvement district No. 565, needs only 10% of the qualified electors' signatures.

Petitioner further alleges the failure to submit the issue to the electors violates Article III, Section 5 and Article XI, Section 8, 1972 Montana Constitution.

The district court made an order granting an alternative writ of mandamus. Thereafter the Commission filed an answer and a motion

-2-

to quash. The cause was briefed and heard on October 25, 1976, before Hon. Jack Shanstrom, who granted the motion to quash and dismissed with prejudice.

On appeal to this Court seven issues are set forth by petitioner, however we find the determining issue to be: Whether the ordinance and resolution relating to special improvement district No. 565 are subject to either referendum or initiative procedures?

This Court has long exercised judicial restraint in reaching and deciding the constitutionality of legislative acts, particularly where, as here, the case can be decided on nonconstitutional grounds.

Declining unnecessary decisions on the constitutionality of legislative enactments and the reasons therefor is summarized in 16 Am Jur 2d, Constitutional Law §111, p. 298. State ex rel Hammond v. Hager, 160 Mont. 391, 503 P.2d 52. The instant case can be decided on other than constitutional grounds.

Appellant-petitioner contends that initiative lies to repeal Ordinance No. 962 of the city of Bozeman. We disagree. Courts have consistently held initiative and referendum procedures are applicable to those acts that are legislative in character and are not applicable to procedures that are administrative in character. This Court in City of Billings v. Nore, 148 Mont. 96, 104, 417 P.2d 458, noted:

> "Montana has for many years followed the rule that initiative does not lie concerning matters administrative in nature. See Carlson v. City of Helena, 39 Mont. 82, 102 P. 39; Allen v. City of Butte, 55 Mont. 205, 175 P. 595."

The Court in Nore then went on to distinguish legislative from administrative action noting:

> "The problem of differentiating between legislative actions and administrative or executive actions is often difficult. Appellants suggest, and we accept, that one reasonable test to be used in making such differentiation is whether the act was one creating new law (legislative) or executing an already existing law (administrative). See Keigley v. Bench, 97 Utah 69, 89 P.2d 480, 122 A.L.R. 756."

In Nore the question before the Court was whether an ordinance establishing sewer rates for the city of Billings, pursuant to section

11-2219, R.C.M. 1947, was an administrative act of the city council and not subject to either initiative or referendum? The district court found it was and the same reasoning can be applied in the instant case. To hold otherwise would make the everyday administration of municipal affairs unworkable. Every dissatisfied bidder or disappointed job applicant could invoke the machinery of referendum and thereby suspend the taking effect of valid administrative acts. To do so would seriously affect the efficiency and economy in the business administration of a city.

Section 11-2214, R.C.M. 1947, entitled "Methods of payments of improvements." provides:

"(1) To defray the cost of the making of any of the improvements provided for in this act, the city council or commission shall adopt one of the following methods of assessment; unless otherwise provided in subsection 1(c):

"* * *

"(d) When the purpose of the assessment is for the establishment and/or improvement of offstreet parking as provided in this act, the city council or commission shall assess against the real property specifically benefited by the offstreet parking facilities, the cost of the developments involved, in proportion to the benefits received by each tract of land within said district. In determining the benefit to be received by each parcel of land, the city council or commission shall consider:

"(i) the relative distance of the parking facility from each parcel of land within the area of the special improvement district;

"(ii) the relative needs of parking spaces for each parcel of land located within the boundaries of said district, either as established by the city zoning ordinance, if any, or otherwise, with relation to the use of said parcel;

"(iii) the assessed value of each parcel within said district;

"(iv) the square footage of each parcel within said district as it relates to the whole;

"(v) the square footage of floor space in any improvements on the parcel and the various uses of such floor space;

"(vi) the availability of existing on-site parking space on any parcel of land within the district. Provided, however, that before any improvement district can be created or financed under the provisions of this section, the city council or commission must, prior to the creation of said district, pass a city ordinance setting forth therein the formula to be used in determining the assessment of each lot or parcel within said district, which said formula must include but shall not be limited to the items to be considered as set forth hereinabove. And provided further that prior to the adoption of any such ordinance by the city council or commission, the city council or commission shall make a determination of the formula for the method of assessment as set forth above, considering all of the factors above set forth, and shall hold a public hearing after due notice and at such hearing all persons concerned may present their objections to the formula or any part of it and point out errors and inequities and submit reasons for amendments and corrections. The council may continue the hearing from time to time. After the council has heard all objections and suggestions, it shall correct any errors which it finds in the formula for assessment as originally made and shall finally establish and settle the formula for assessment in the same manner as any other city ordinance.

" * * *".

With the provisions of the above statute in mind, a careful reading of Ordinance No. 962, shows the Commission was performing an administrative function and therefore was not subject to initiative.

In support of the Court's holding that courts do not, in dealing with local improvement ordinances, hold them subject to munipal-wide referendum or initiative process, see: Chase v. Kalber, 28 Cal.App. 561, 153 P. 397; City of Globe v. Willis, 16 Ariz. 378, 146 P. 544; St. John v. King, 130 Cal.App. 356, 20 P.2d 123; Village of Crotty v. Domm, 338 Ill. 228, 170 N.E. 308; Alexander v. Mitchell, 119 C.A.2d 816, 260 P.2d 261; Dewey v. Doxey-Layton Realty Co., 3 Utah2d 1, 277 P.2d 805; Anno. 122 A.L.R. 769, 786.

The decision of the district court is affirmed.

_____
Justice

-5-

We Concur:

_____
        Chief Justice

_____

_____

_____
      Justices