Justice Laurie McKinnon delivered the Opinion and Order of the Court.
***530 ¶1 The Montana Mining Association (MMA) challenges the Attorney General's determination that Initiative 186 (I-186) is legally sufficient in an original proceeding before this Court. This Court has "original jurisdiction to review ... the attorney general's legal sufficiency determination in an action brought pursuant to 13-27-316." Section 3-2-202(3)(a), MCA. We conclude this proceeding is properly before this Court and exercise our original jurisdiction.
¶2 If enacted, I-186 would change the mine permitting process by adding a requirement to mines' reclamation plans. I-186 proposes amendments to §§ 82-4-336 and -351, MCA, and would prohibit new hard-rock mines' reclamation plans from requiring perpetual treatment of polluted water. MMA challenges I-186 on the basis that it violates § 13-27-105, MCA, which requires that an initiative issue delegating rulemaking authority be "effective no sooner than October 1 following approval." We deny MMA's request to overrule the Attorney General's legal-sufficiency determination and address the following issue:
If a proposed initiative potentially delegates rulemaking authority, is the initiative's effective date part of the Attorney General's legal-sufficiency review?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 In February 2018, I-186's proponents (Proponents) submitted Ballot Initiative No. 12 (BI-12) to the Secretary of State and the Legislative Services Division for review. Legislative Services responded with comments and a revised draft. Some of Legislative Services'
***531 concerns regarded BI-12's use of terms such as "perpetual treatment," noting that *525 BI-12 did not provide definitions. Proponents responded, accepting certain revisions and commenting on Legislative Services' suggestions. To clarify what treatment activities would constitute "perpetual treatment," Proponents added the term "perpetual leaching" and noted "that any further definition, if needed, is within the scope of agency rulemaking."
¶4 In April 2018, Proponents submitted a draft of Ballot Initiative No. 14 (BI-14) to Legislative Services, which was substantially similar to BI-12. Legislative Services responded, providing specific comments and revisions to BI-14, but also referring proponents to Legislative Services' previous comments regarding BI-12. Proponents subsequently submitted BI-14 to the Attorney General for a legal-sufficiency review pursuant to § 13-27-312, MCA. The Attorney General made slight revisions, determined the initiative was legally sufficient, and named the proposed ballot initiative I-186. Proponents began the signature-gathering process.
¶5 I-186 offers amendments to §§ 82-4-336 and -351, MCA, and provides that the changes would be "effective upon approval by the electorate." Specifically, I-186 would add a new subsection (13) to § 82-4-336, MCA, providing:
(a) The reclamation plan must contain measures sufficient to prevent the pollution of water without the need for perpetual treatment. (b) For purposes of this subsection (13), the term "perpetual treatment" includes activities necessary to treat acid mine drainage or perpetual leaching of contaminants, including arsenic, mercury and lead. (c) This subsection (13) applies except in the case of a proposed amendment to an operating permit or reclamation plan pursuant to which a mine has been permitted on or before November 6, 2018.
I-186 would further amend § 82-4-351, MCA, by adding a new subsection (3), providing:
The department shall deny an application for a permit or an application for an amendment to a permit unless the department finds, in writing and based on clear and convincing evidence, that the reclamation plan meets the requirements of 82-4-336(13). This subsection (3) applies except in the case of a proposed amendment to an operating permit or reclamation plan pursuant to which a mine has been permitted on or before November 6, 2018.
The statement of purpose for I-186 approved by the Attorney General ***532 provides:
I-186 requires the Department of Environmental Quality to deny a permit for any new hardrock mines in Montana unless the reclamation plan provides clear and convincing evidence that the mine will not require perpetual treatment of water polluted by acid mine drainage or other contaminants. The terms "perpetual treatment," "perpetual leaching," and "contaminants" within I-186 are not fully defined and would require further definition from the Montana Legislature or through Department of Environmental Quality rulemaking .
(Emphasis added.)
¶6 On May 25, 2018, MMA filed this original action, challenging the Attorney General's legal-sufficiency determination. MMA asks this Court to determine that I-186 is legally insufficient because it violates § 13-27-105, MCA, regarding the effective date of initiative issues. MMA requests this Court issue an order, pursuant to § 13-27-316(3)(c)(iii), MCA, finding that the initiative is legally insufficient, declaring all petitions supporting I-186 void, and declaring that no future signature gathering may occur unless the petition complies with applicable law.
DISCUSSION
¶7 The Attorney General is charged with ensuring that proposed initiatives are legally sufficient. Section 13-27-312(1), MCA. A proposed initiative is legally sufficient if the petition "complies with statutory and constitutional requirements governing submission of the proposed issue to the electors." Section 13-27-312(7), MCA. The Attorney General's review "of the petition for legal sufficiency does not include consideration of the substantive legality of the issue if approved by the voters." Section 13-27-312(7), MCA. See also Mont. Consumer Fin. Ass'n v. State , 2010 MT 185, ¶ 9, 357 Mont. 237, 238 P.3d 765.
*526 Instead, the Attorney General's review is meant to identify non-substantive statutory and constitutional deficiencies regarding submission of the initiative to the voters. Section 13-27-312(7), MCA. This Court's examination is, in turn, limited to a review of "the attorney general's legal sufficiency determination." Section 3-2-202(3)(a), MCA ; § 13-27-316(2), MCA ("If the opponents of a ballot issue ... believe that the attorney general was incorrect in determining that the petition was legally sufficient, they may ... file an original proceeding in the supreme court challenging ... the attorney general's determination ....").
¶8 The Legislature developed specific statutory guidelines regarding when an initiative issue may become effective.
***533 Section 13-27-105(1), MCA, provides:
Unless the petition placing an initiative issue on the ballot states otherwise, an initiative issue ... approved by the people is effective on October 1 following approval. If the issue delegates rulemaking authority, it is effective no sooner than October 1 following approval.
The petition placing I-186 on the ballot provides that the statutory amendments would be "effective upon approval by the electorate," but contains no language on its face which delegates or otherwise mentions rulemaking. I-186's statement of purpose does not address the initiative's effective date if approved by the voters, but does provide that the terms "perpetual treatment," "perpetual leaching," and "contaminants" "would require further definition from the Montana Legislature or through Department of Environmental Quality rulemaking."
¶9 MMA argues the effective date renders the Attorney General's determination that I-186 is legally sufficient incorrect. The petition for I-186 provides for an immediate effective date; however, MMA maintains that I-186 delegates rulemaking authority and therefore cannot become effective sooner than October 1 following approval. MMA supports its position by arguing that Title 13, Chapter 27, MCA, as a whole, contains the statutory requirements that set forth the scope of the Attorney General's legal-sufficiency review. MMA reasons that an initiative's effective date is a statutory requirement governing the submission of the proposed issue to the electors-something that is purely procedural-and therefore within the scope of the Attorney General's legal-sufficiency review. MMA asserts that I-186 "undisputedly delegates agency rulemaking." I-186's statement of purpose explicitly states that certain terms are not defined and "would require further definition from the Montana Legislature or through Department of Environmental Quality rulemaking ." (Emphasis added.)
¶10 The Attorney General and amicus curiae[1] argue that the statutory text of I-186 does not delegate rulemaking authority and, further, that the effective date is not part of the Attorney General's legal-sufficiency review because whether an initiative's effective date complies with § 13-27-105(1), MCA, is a substantive legal question, not a question of procedural sufficiency. The Attorney General reasons that ***534 § 13-27-105(1), MCA, does not provide what information a proposed initiative must contain, unlike, for example, § 13-27-204, MCA, which details the form of an initiative's petition. Instead, § 13-27-105(1), MCA, provides that "if the issue delegates rulemaking authority, it is effective no sooner than October 1." (Emphasis added.) The Attorney General argues that an initiative delegating rule making authority "is effective no sooner than October 1," regardless of whether the initiative states an earlier date.[2]
¶11 The Attorney General further contends that, even if the Court decides that an initiative's effective date falls within the Attorney General's legal-sufficiency review, MMA's argument fails because I-186 does not delegate rulemaking authority. The Attorney General reasons that I-186's proposed *527 statutory text, on its face, does not delegate rulemaking authority. While acknowledging that I-186 will likely require further direction from the Legislature or other rulemaking before it can be enforced, as I-186 contains new terms requiring definition and processes requiring enforcement, the Attorney General distinguishes an initiative containing clear and specific language delegating rulemaking authority from an initiative such as I-186, which does not contain clear delegation language but will likely require additional rulemaking if passed. The Attorney General reasons that the need for new rules alone is not itself a grant of rulemaking authority. The Attorney General therefore concludes that the October 1 effective-date requirement does not apply to I-186.
¶12 We determine that the issue of whether I-186 delegates rulemaking authority and thus requires an effective date of no sooner than October 1 is outside the scope of the Attorney General's legal-sufficiency review. The Attorney General's legal-sufficiency review of I-186 was necessarily limited to the "statutory and constitutional requirements governing submission of the proposed issue to the electors." See § 13-27-312(7), MCA. To determine whether I-186 complies with § 13-27-105(1), MCA, the Attorney General would have to decide if I-186 delegates rulemaking authority. Answering that question would require the Attorney General to analyze the text or substance of I-186 in the context of relevant caselaw and statutes addressing the delegation of rulemaking authority to an agency, which ***535 is a broader inquiry than whether I-186 complies with statutory and constitutional requirements governing submission of a ballot initiative to the electors. See § 13-27-312(7), MCA. The statutory text of I-186, see supra ¶ 5, does not "contain specific guidelines describing for the agency and the public what the rules may and may not contain." Section 5-4-103, MCA (setting forth the manner in which a statute must delegate rulemaking authority to an agency). However, I-186's statement of purpose provides that certain terms will need to be defined through future "rulemaking." We would have to undergo a substantive review of I-186 in order to determine whether it delegates rulemaking authority-something we cannot do based on the limited nature of the Attorney General's legal-sufficiency review and our review thereof.
¶13 The "initiative and referendum provisions of the Constitution should be broadly construed to maintain the maximum power in the people." Nicholson v. Cooney , 265 Mont. 406, 411, 877 P.2d 486, 488 (1994) (citing Chouteau Cnty. v. Grossman , 172 Mont. 373, 378, 563 P.2d 1125, 1128 (1977) ). Pre-election judicial review is disfavored because the people of Montana have a constitutional right to "change the laws of this State through the initiative process." Harper v. Greely , 234 Mont. 259, 265-66, 763 P.2d 650, 654 (1988) (quoting State ex rel. Boese v. Waltermire , 224 Mont. 230, 234, 730 P.2d 375, 378 (1986) ). Because the issue of whether I-186 delegates rulemaking authority is outside the scope of the Attorney General's legal-sufficiency review, it is also, accordingly, outside the scope of this Court's pre-election initiative review.
¶14 IT IS ORDERED that MMA's request to overrule the Attorney General's legal-sufficiency determination for I-186 is DENIED.
DATED this 19th day of June, 2018.
We Concur:
MIKE McGRATH, C.J.
JIM RICE, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.

Amicus curiae, YES for Responsible Mining, submitted a brief supporting the Attorney General.

I-186 contains a severability clause, providing, in part, that if a part of I-186 "is invalid, all valid parts that are severable from the invalid part remain in effect." Amicus thus maintains that if the effective date is subsequently determined to be invalid, it may be severed and the remaining provisions of I-186 upheld.